**MARK B. FROST & ASSOCIATES**
Mark B. Frost, Esquire
Dylan T. Hastings, Esquire
One South Broad Street, Suite 1510
Philadelphia, PA 19107
215-351-3333

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AL-AMIN ABDUL-JABBAR, | : | **CIVIL ACTION** |
| SHATISHA ABDUL-JABBAR, | : | |
| LATYSA BELL, and | : | |
| SHARON BELL, | : | No. 2:21-cv-2077 |
| **Plaintiffs,** | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| OFFICER MATTHEW SIBONA, | : | **COMPLAINT** |
| OFFICER NATHAN LONDON, | : | |
| OFFICER LEVAUN RUDISILL | : | |
| OFFICER DIETRA CUFFIE, | : | |
| OFFICER [FNU] SIMMONS, | : | |
| OFFICER [FNU] FLOYD, | : | |
| OFFICER [FNU] FRANCIS, | : | |
| OFFICERS JOHN AND JANE DOES 1-10 | : | |
| **In their individual and official capacities,** | : | |
| OFFICE OF THE DISTRICT ATTORNEY | : | |
| OF PHILADELPHIA COUNTY, | : | |
| ASSISTANT DISTRICT ATTORNEYS | : | |
| JOHN AND JANE DOES 1-10, | : | |
| **In their individual and official capacities,** | : | |
| | : | |
| **Defendants.** | : | |

## I.  INTRODUCTION

1.      This action for declaratory, injunctive and other appropriate relief is brought by Plaintiffs

Al-Amin Abdul-Jabbar, Shatisha Abdul-Jabbar, Latysa Bell, and Sharon Bell (collectively

"Plaintiffs") to redress the intentional violations by and other of the rights secured to them

under the laws of the United States of America.

## II.  JURISDICTION

2.      Jurisdiction is conferred upon this court by the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983 which provide original jurisdiction for Plaintiffs' claims.

3.      Jurisdiction over the state law claims is based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

4.      The amount in controversy exceeds one hundred thousand dollars ($100,000).

## III.  VENUE

5.      All actions complained of herein have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendant who reside within the jurisdictional limits.   Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## IV.  PARTIES

6.      Al-Amin Abdul-Jabbar resides in the City limits of the City of Philadelphia, PA ("Mr. Jabbar").

7.      Shatisha Abdul-Jabbar resides in the City limits of the City of Philadelphia, PA ("Mrs. Jabbar").

8.      Mr. and Mrs. Jabbar are husband and wife.

9.      Latysa Bell resides in the City limits of the City of Philadelphia, PA.

10.     Sharon Bell resides in the City limits of the City of Philadelphia, PA.

11.     The City of Philadelphia is a municipality in the Commonwealth of Pennsylvania, maintaining municipal offices at 1515 Arch Street, Philadelphia, PA 19102.

12.     The City of Philadelphia controls and operates the Philadelphia Police Department ("PPD").

13.     The Defendant Officers, including Matthew Sibona, Nathan London, Levaun Rudisill, Dietra Cuffie, [FNU] Simmons, [FNU] Floyd, [FNU] Francis, and the John and Jane Doe Officers, were at all times material PPD officers acting under color of law (collectively "Defendant Officers").

14.     The Office of the District Attorney of Philadelphia County is the largest prosecutor's office in the state of Pennsylvania maintaining its offices at 3 Penn Square, Philadelphia, PA 19107.

15.     The Defendant District Attorneys, including the John and Jane Doe Assistant District Attorneys, were at all times material acting under color of law (the "Defendant ADAs")

## V.  FACTS

16.     Plaintiffs adopts the above paragraphs by reference.

## July 2017 Prior Arrest of Al-Amin Abdul-Jabbar

17.     On or about the evening of July 19, 2017, Mr. Jabbar was performing construction work at the property located at 1237 W. Hilton Street, Philadelphia, PA 19133.

18.     Mr. Jabbar then entered a vehicle belonging to the individual Mr. Jabbar was performing said construction work, in order to purchase additional supplies.

19.     Several Philadelphia Police Officers for no legitimate purpose and without probable cause – stopped the vehicle and ordered the Mr. Jabbar out of the vehicle, at approximately Carlisle and Alleghany Streets.

20.     Thereafter, several police vehicles arrived on the scene.

21.     Mr. Jabbar was handcuffed, over $800 was taken from his person, along with his wallet, and Mr. Jabbar was placed in a police vehicle.

22.     The officers escorted Mr. Jabbar to a nearby McDonald's parking lot and began questioning him. Mr. Jabbar explained that he had been performing construction on the W. Hilton Street property, and noted that his union card was now in the officers' possession; this card would substantiate that he was performing construction.

23.     Despite this, Mr. Jabbar was taken, in the police vehicle, back to 1237 W. Hilton, where he was forced to remain in the vehicle.

24.     There, Mr. Jabbar witnessed the officers kick down the door to the property.

25.     The officers falsely claimed that they found: 1) crack cocaine in the W. Hilton Street property 2) marijuana in the vehicle Mr. Jabbar had been travelling in when he was initially stopped by police, and 3) a gun in the trunk of said vehicle.

26.     The officers were aware that said evidence had been planted, but proceeded to acquiesce to and participate in the arrest of the Mr. Jabbar.

27.     Further, while more than $800 was taken from Mr. Jabbar, police claimed that only $292 was recovered from Mr. Jabbar.

28.     Mr. Jabbar was transported back to the police station and criminally charged.

29.     Mr. Jabbar was incarcerated pending trial, from approximately July 19, 2017 to his trial in June 2019.

30.     During a preliminary hearing on September 13, 2017, Officer Jonathan Czapor falsely testified against Mr. Jabbar, for no legitimate purpose and in an effort to secure a baseless conviction.

31.  On November 8, 2018, during a motion hearing, Officers Jonathan Czapor and John Seigafuse falsely testified against Mr. Jabbar, for no legitimate purpose and in an effort to secure a baseless conviction.

32.  In June 24-27, 2019, Mr. Jabbar was tried for the aforementioned criminal charges.

33.  Mr. Jabbar was acquitted by a jury on June 27, 2019.

34.  Mr. Jabbar, however, remained incarcerated from the time of the arrest until his acquittal.

35.  Mr. Jabbar was forced to be incarcerated for nearly two years; approximately $800 of cash was wrongfully seized from Mr. Jabbar by the officers, and he only received $140 back upon acquittal; Mr. Jabbar lost his employment and means of financial support due to his charges and incarceration; Mr. Jabbar and his wife were evicted due to his being incarcerated and not being able to work or otherwise support his family.

## Al-Amin Abdul-Jabbar's July 2019 Civil Lawsuit

36.  On July 18, 2019, Mr. Jabbar filed a Complaint in the United States District Court for the Eastern District of Pennsylvania against the City of Philadelphia and the police officers who arrested him without probable cause alleging counts of Malicious Prosecution, Malicious Use and Abuse of Process, False Arrest, False Imprisonment, and Conspiracy (Docket No. 19-3148).

37.  The case settled on June 15, 2020.

## October 2019 Arrest of Al-Amin Abdul-Jabbar

38.  On or about October 23, 2019, the Defendant Officers pulled Mr. Jabbar over while he was driving his vehicle to work at or around 2616 North 12th Street, Philadelphia, PA without probable cause.

39.  Mr. Jabbar voluntarily pulled his vehicle to the side of the street and was immediately surrounded by at least six police vehicles operated by the Defendant Officers.

40.  With their firearms drawn, the Defendant Officers demanded that Mr. Jabbar exit his vehicle, but did not explain the reason for their demand or why they pulled his vehicle over.

41.  Mr. Jabbar demanded that Defendant Officers produce an arrest warrant which they refused to do.

42.  Mr. Jabbar agreed to exit the vehicle and was immediately placed in handcuffs and seated in the back of a police vehicle; however, Mr. Jabbar was not read his Miranda rights, shown an arrest warrant, or provided any reasons for his arrest.

43.  While Mr. Jabbar was detained in the back of a police vehicle, the Defendant Officers performed an unlawful search and seizure of his automobile at which time Defendant Officer Floyd allegedly produced a "safe" from the vehicle which contained narcotics.

44.  However, the safe that Defendant Officer Floyd allegedly produced from Mr. Jabbar's vehicle was not present when Mr. Jabbar voluntarily exited his vehicle; it was planted by the Defendant Officers.

45.  Mr. Jabbar's vehicle was left at the scene until it was later recovered by a family member.

46.  Thereafter, the Defendant Officers drove Mr. Jabbar to the home where his mother and sister, Sharon Bell and Latysa Bell, reside located at 2616 N. 12th Street, Philadelphia, PA (the "Property").

47.  When the Defendant Officers arrived at the Property, at or around 9:00 a.m., they executed a search warrant by battering down the front door of the residence without first notifying those in the property of their presence or the purpose thereof.

48.   A simple search on Philadelphia's property ownership website would have revealed that the Property was owned by Latysa Bell and her husband, Robert B. Walker, not Mr. Jabbar.

49.   Luckily, Mr. Walker had left the Property to take his and Ms. Bell's young children to school.

50.   Upon their unlawful entry in the Property, the Defendant Officers, with their weapons drawn, found Latysa Bell in the nude dressing for work which caused her profound shock, fright, embarrassment, and humiliation.

51.   Latysa Bell continues to suffer from severe emotional distress as a result of these events.

52.   Subsequently, a female Defendant Officer entered Sharon Bell's room with a firearm aimed directly at her head causing her to urinate herself out of sheer shock, fear, and confusion.

53.   At the time of the Defendant Officers' unlawful entry into the Property, and still to this day, Sharon Bell was suffering from early onset dementia among many other serious medical conditions which only heightened her shock, fear, and confusion.

54.   The Defendant Officer allowed Sharon Bell to shower as the Defendant Officers continued their unlawful search of the Property, but watched her as she showered which caused her undue embarrassment and humiliation.

55.   Sharon Bell continues to suffer from severe emotional distress as a result of these events.

56.   As the Defendant Officers were scouring the Property, a Defendant Officer attempted to plant the safe that Defendant Officer Floyd allegedly produced from Mr. Jabbar's vehicle in the Property.

57.   However, the Defendant Officers' attempt to plant narcotics in the Property was foiled after Latysa Bell witnessed them and exclaimed "that box did not come from this house!"

58.   No narcotics, or any illegal items for that matter, were discovered at the Property after the Defendant Officers' unlawful search and seizure.

59.   The front door that the Defendant Officers unlawfully battered down still remains in disrepair and neither Latysa Bell nor Mr. Walker have received any compensation from the City of Philadelphia to repair their door.

60.   Further, during the Defendant Officers' unlawful search of the Property, they caused physical damage to the Property and to the personal possessions of Latysa Bell and Sharon Bell which the City of Philadelphia has not compensated them for.

61.   Following the Defendant Officers' unlawful search and seizure of the Property, they transported Mr. Jabbar to a warehouse on Fox Street, near Allegheny Avenue, where several other individuals were detained, i.e. a roundup.

62.   There, the Defendant Officers questioned Mr. Jabbar for over three (3) hours about individuals and events, and provided that if he gave them information that he would be free to leave; however, Mr. Jabbar explained that he did not possess information responsive to their inquiries.

63.   As such, Mr. Jabbar was transported to Curran-Fromhold Correctional Facility ("CFM") on charges of possession of a controlled substance with the intent to deliver, criminal use of a communication facility, and possession of a prescription medication without a prescription.

64.   Mr. Jabbar remained at CFM until or around December 13, 2020 when the Philadelphia District Attorney's Office dismissed its initial charges against him, but the Defendant ADAs represented to the Court that new charges would be filed.

65.   As a result of the representations of the Defendant ADAs, the Court placed Mr. Jabbar on house arrest for six (6) months while the District Attorney's Office mulled Mr. Jabbar's new charges.

66.   During this time, the Philadelphia District Attorney's Office, through one or more Defendant ADAs, re-filed charges against Mr. Jabbar on three (3) separate occasions, all of which related to his October 23, 2019 arrest.

67.   However, the Court eventually dismissed the charges against Mr. Jabbar with prejudice in June 2020 upon a finding that the District Attorney's Office lacked evidence to support its claims against Mr. Jabbar.

68.   The Defendant ADAs' filing and re-filing of the charges against Mr. Jabbar was done with malice and without probable cause.

## Policy, Custom, and Practice of the City of Philadelphia

69.   Plaintiffs were damaged and injured as set forth above under 42 U.S.C. § 1983 by the City of Philadelphia.

70.   Prior to the aforementioned arrest of Mr. Jabbar, the City of Philadelphia – through its policymakers - developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiffs' rights.

71.   It was the policy and/or custom of the City of Philadelphia to cover-up and avoid detection of improper and illegal police activity, particularly by narcotics officers, including but not limited to planting evidence, false arrest, false imprisonment, unlawful detention, failure to intervene against other Officers' illegal conduct, assault and battery, and infliction of emotional distress.

72.     It was the policy and/or custom of the City of Philadelphia to fail to sufficiently supervise against, train and/or re-train against, and discipline against illegal police activity, including but not limited to planting evidence, false arrest, false imprisonment, unlawful detention, failure to intervene against other Officers' illegal conduct, assault and battery, and infliction of emotional distress.

73.     There has been a longstanding history of Philadelphia Police Officers engaging in rampant illegal conduct, particularly involving narcotics arrests.    A non-exhaustive list of such conduct includes:

        a.   In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th Police District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over 40 Philadelphians.

             These Officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects.

        b.   In 1997, federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics officer John Boucher was a potentially corrupt police officer.

        c.   In the last five to ten years, numerous officers have engaged in conduct causing them to be removed from assignments.  In the last five years, as the result of a series of articles by Philadelphia Daily News reporters known as "Tainted Justice," Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna, and Thomas Deabler have all been assigned to either desk duty or related assignments. Those officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide

10

their conduct, which included theft of cash and groceries.   Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving a confidential informant who subsequently denied having provided information or services on many of the cases in which Cujdik affirmed he had.

d. Other PPD officers planted evidence on victims in order to arrest and wrongfully convict individuals.

e. A series of PPD officers, on at least twenty occasions, were alleged to have both planted narcotics evidence on civilians in order to falsely accuse them of narcotics-related crimes, and also stole monies from these civilians, whereby the officers would seize monies and then falsely claim in paperwork that a lower amount had actually been recovered, unlawfully keeping the remaining monies for themselves. This pattern continued for years. The City of Philadelphia and its policymakers were aware of these incidents.

f. Further, the City and high-ranking officials in PPD have faced, and continue to face, a series of lawsuits wherein similar allegations are made of planting narcotics on civilians and stealing monies in the pattern described above.

74.   It was the policy and/or custom of The City of Philadelphia to inadequately supervise and train its Police Officers, including the Defendant Officers, against a code of silence or "blue code" of Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Officers.

75.   The aforementioned policies and customs were ratified by leadership and policymakers in the PPD, specifically the PPD Commissioner, Deputy Commissioners, Chief Inspectors,

and Inspectors, who were aware of the aforementioned pattern and practice of constitutional violations set forth above.

76. As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

## COUNT I
## AL-AMIN ABDUL JABBAR V. ALL DEFENDANTS
## MALICIOUS PROSECUTION under 42 U.S.C. § 1983

77. Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

78. Defendants instituted criminal proceedings against Mr. Jabbar without probable cause and with malice, in violation of Mr. Jabbar's constitutional rights.

79. Defendants maintained the criminal proceedings against Mr. Jabbar knowing that they did not possess the requisite evidence to sustain their burden of proof.

80. Defendants were motivated to maliciously prosecute Mr. Jabbar in retaliation for Mr. Jabbar's July 2019 lawsuit.

81. The criminal proceeding was terminated in favor of Mr. Jabbar.

82. Defendants knew that the criminal charges against Mr. Jabbar were unwarranted.

83. As a direct and proximate result of the actions of Defendants, Mr. Jabbar was incarcerated, expended monies including attorneys' fees in defense of the criminal charges against him and was terminated from his employment.

84. Mr. Jabbar was also deprived of his liberty.

85. The above actions of Defendants were a result of the policies, practices and/or customs of

the City of Philadelphia, Philadelphia Police Department, and the District Attorney's Office.

86.     The aforesaid actions of Defendants constitute malicious prosecution, in violation of Mr. Jabbar's Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Mr. Jabbar respectfully requests this Honorable Court:

    a.    Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate his rights;

    b.    Award him compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    c.    Award him reasonable costs and attorneys' fees;

    d.    Award him punitive damages; and

    e.    Grant him any other relief this Court deems just and proper under the circumstances.

## COUNT II
## AL-AMIN ABDUL-JABBAR V. ALL DEFENDANTS
## MALICIOUS USE AND ABUSE OF PROCESS under 42 U.S.C. § 1983

87.     Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

88.     Defendants instituted criminal proceedings against Mr. Jabbar without probable cause and with malice, in violation of Mr. Jabbar's constitutional rights for the purpose of retaliating against Mr. Jabbar for bringing his July 2019 Lawsuit.

89.     Defendants maintained the criminal proceedings against Mr. Jabbar knowing that they did

not possess the requisite evidence to sustain their burden of proof.

90.    The claims against Mr. Jabbar were dismissed.

91.    As a direct and proximate result of the actions of Defendants, Mr. Jabbar was incarcerated, expended monies including attorneys' fees in defense of the criminal charges against him and was terminated from his employment.

92.    Mr. Jabbar was also deprived of his liberty.

93.    The above actions of Defendants were a result of the policies, practices and/or customs of the City of Philadelphia, Philadelphia Police Department, and the District Attorney's Office.

94.    The aforesaid actions of Defendants constitute malicious use and abuse of process, in violation of Mr. Jabbar's Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Mr. Jabbar respectfully requests this Honorable Court:

      a.    Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate his rights;

      b.    Award him compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

      c.    Award him reasonable costs and attorneys' fees;

      d.    Award him punitive damages; and

      e.    Grant him any other relief this Court deems just and proper under the circumstances.

## COUNT III
## AL-AMIN ABDUL-JABBAR V. THE CITY OF PHILADELPHIA AND
## THE DEFENDANT POLICE OFFICERS
## FALSE ARREST under 42 U.S.C. § 1983

95.   Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

96.   Mr. Jabbar was arrested by the Defendant Officers without probable cause for said arrest.

97.   As a direct and proximate result of the actions of the Defendant Officers, Mr. Jabbar was incarcerated, expended monies including attorneys' fees in defense of the criminal charges against him and was terminated from his employment.

98.   Mr. Jabbar was also deprived of his liberty.

99.   The above actions of the Defendant Officers were as a result of the policies, practices and/or customs of the City of Philadelphia and Philadelphia Police Department.

100.  The aforesaid actions of the Defendant Officers constitute a false arrest, in violation of Mr. Jabbar's Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Mr. Jabbar respectfully requests this Honorable Court:

      a.   Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate his rights;

      b.   Award him compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

      c.   Award him reasonable costs and attorneys' fees;

      d.   Award him punitive damages; and

e.      Grant him any other relief this Court deems just and proper under the circumstances.

## COUNT IV
## AL-AMIN ABDUL-JABBAR V. ALL DEFENDANTS
## FALSE IMPRISONMENT under 42 U.S.C. § 1983

101.    Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

102.    Mr. Jabbar was imprisoned by Defendants without probable cause for said imprisonment.

103.    As a direct and proximate result of the actions of Defendants, Mr. Jabbar was incarcerated, expended monies including attorneys' fees in defense of the criminal charges against him and was terminated from his employment.

104.    Mr. Jabbar was also deprived of his liberty.

105.    The above actions of Defendants were as a result of the policies, practices and/or customs of the City of Philadelphia, Philadelphia Police Department, and the District Attorney's Officer.

106.    The aforesaid actions of Defendants constitute false imprisonment, in violation of Mr. Jabbar's Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Mr. Jabbar respectfully requests this Honorable Court:

a.      Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate his rights;

b.      Award him compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c.      Award him reasonable costs and attorneys' fees;

d.      Award him punitive damages; and

e.      Grant him any other relief this Court deems just and proper under the circumstances.

**COUNT V**
**AL-AMIN ABDUL-JABBAR V. ALL DEFENDANTS**
**FIRST AMENDMENT VIOLATIONS under 42 U.S.C. § 1983**

107. Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

108. Mr. Jabbar did actually engage in protected speech when he instituted a civil lawsuit against the City of Philadelphia and officers of the Philadelphia Police Department in July 2019.

109. Defendants violated the provision of 42 U.S.C. § 1983 in that Defendants, acting under color of state law, deprived Mr. Jabbar of privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution.

110. Defendants willfully and recklessly took actions to penalize and retaliate against Mr. Jabbar for his exercise of his fundamental First Amendment right of speech.

WHEREFORE, Mr. Jabbar respectfully requests this Honorable Court:

a.      Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate his rights;

b.      Award him compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c.      Award him reasonable costs and attorneys' fees;

    d.      Award him punitive damages; and

    e.      Grant him any other relief this Court deems just and proper under the circumstances.

**COUNT VI**
**AL-AMIN ABDUL-JABBAR V. ALL DEFENDANTS**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS, 42 USC § 1985**

111.    Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

112.    Defendants conspired to violate Mr. Jabbar's civil rights, as set forth above.

113.    The above actions of the Defendants were as a result of the policies, practices and/or customs of the City of Philadelphia and Philadelphia Police Department.

114.    The aforesaid actions of Defendants constitute false imprisonment, in violation of Mr. Jabbar's Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Mr. Jabbar respectfully requests this Honorable Court:

    a.      Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate his rights;

    b.      Award him compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    c.      Award him reasonable costs and attorneys' fees;

    d.      Award him punitive damages; and

    e.      Grant him any other relief this Court deems just and proper under the circumstances.

**COUNT VII**
**SHARON BELL AND LATYSA BELL V. THE CITY OF PHILADELPHIA**
**AND THE DEFENDANT OFFICERS**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

115.    Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

116.    The acts of the Defendant Officers towards Sharon Bell and Latysa Bell were extreme and outrageous.

117.    The Defendant Officers acted with an intentional and/or a reckless disregard towards Sharon Bell and Latysa Bell.

118.    As a result of the Defendant Officers' actions, Sharon Bell and Latysa Bell suffered and continue to suffer from severe emotional distress.

WHEREFORE, Sharon Bell and Latysa Bell respectfully request this Honorable Court:

a.    Award them compensatory damages including but not limited to: pain, suffering, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

b.    Award them reasonable costs and attorneys' fees;

c.    Award them punitive damages; and

d.    Grant them any other relief this Court deems just and proper under the circumstances.

**COUNT VIII**
**SHARON BELL AND LATYSA BELL V. THE CITY OF PHILADELPHIA AND**
**THE DEFENDANT OFFICERS**
**COMMON LAW TRESPASS**

119.   Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

120.   The Defendant Officers unlawfully and intentionally entered the Property by use force.

121.   Neither Sharon Bell nor Latysa Bell invited the Defendant Officers into the Property, or consented to their entry into the Property.

122.   As a result of the Defendant Officers' unlawful and intentional entry into the Property, the Property sustained physical damage as did the personal possessions of Sharon Bell and Latysa Bell.

WHEREFORE, Sharon Bell and Latysa Bell respectfully request this Honorable Court:

   a.   Award them compensatory damages;

   b.   Award them reasonable costs and attorneys' fees;

   c.   Award them punitive damages; and

   d.   Grant them any other relief this Court deems just and proper under the circumstances.

**COUNT IX**
**SHATISHA ABDUL-JABBAR V. ALL DEFENDANTS**
**LOSS OF CONSORTIUM**

123.   Plaintiffs incorporate by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

124.   As a result of Defendants' collective illegal acts against Mr. Jabbar, Mrs. Jabbar was deprived of the services and companionship of her husband.

WHEREFORE, Mrs. Jabbar respectfully requests this Honorable Court:

      a.      Award her compensatory damages;

      b.      Award her reasonable costs and attorneys' fees;

      c.      Award her punitive damages; and

      d.      Grant her any other relief this Court deems just and proper under the circumstances.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**MARK B. FROST & ASSOCIATES**

*/s/ Mark B. Frost*
Mark B. Frost, Esquire
Dylan T. Hastings, Esquire
One South Broad Street, Suite 1510
Philadelphia, PA 19107
P: (215) 351-3333
F: (215) 351-3332
mfrost@mfrostlaw.com
dhastings@mfrostlaw.com
*Attorneys for Plaintiffs*

Dated: May 5, 2021